UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

<table>
<tr><td>

EDRAS AMEDEE,

               Plaintiff,

    v.

AUTOZONERS, LLC, STACY TOSTI,
and IAN J. GILOSA,

               Defendants.

</td><td>

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 12-7107
(JEI/KMW)

**OPINION**

</td></tr>
</table>

**APPEARANCES**:

Ari R. Karpf, Esq.
Richard J. Albanese, Esq.
KARPF, KARPF & CERUTTI, P.C.
Two Greenwood Square
3331 Street Road, Suite 128
Bensalem, PA 19020
    Counsel for Plaintiff Edras Amedee

Tiffani Lynne McDonough, Esq.
OBERMAYER, REBMANN, MAXWELL & HIPPEL, LLP
20 Brace Road, Suite 300
Cherry Hill, NJ 08034
    Counsel for Defendants Autozoners, LLC, Stacy Tosti, and
    Ian J. Gilosa

Admitted *Pro Hac Vice*:
Tracy Kern, Esq.
Mary Margaret Lebato, Esq.
JONES WALKER LLP
201 St. Charles Avenue, Suite 4700
New Orleans, LA 70170
    Counsel for Defendants Autozoners, LLC, Stacy Tosti, and
    Ian J. Gilosa

**IRENAS**, Senior District Judge:

This employment discrimination matter comes before the Court on Defendants Autozoners, LLC ("Autozone"), Stacy Tosti, and Ian Gilosa's motion for summary judgment. Autozone fired Plaintiff Edras Amedee on July 16, 2012. Plaintiff now claims his discharge was racially motivated in violation of 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination ("NJLAD").[1]

Although Plaintiff presents evidence of racial animus, he fails to demonstrate (i) that such animus proximately caused his dismissal, or (ii) that the stated reason for his termination—receipt of customer tips in violation of company policy—was pretext. Consequently, he fails to set forth a cognizable claim for relief. Defendants' motion will be granted.

## I.

Plaintiff, an African-American male, began working for an Autozone store in Williamstown, NJ in April of 2010. (PSMF ¶¶ 5,6,9)[2] Autozone is a nationwide chain of retail stores selling

---

[1] The Court has subject matter jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331 and exercises supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's NJLAD claim.

[2] "PSMF" refers to Plaintiff's Statement of Material Facts (see Dkt. No. 37-2). "DSMF" refers to Defendants' Statement of Undisputed Material Facts (see Dkt. No. 35-3).

automotive parts and accessories.  Autozone is the brand name under which Autozoners, LLC operates.

Plaintiff worked as a part-time sales associate.  He performed minor automotive repairs, such as installing light bulbs and window shield wipers.  (DSMF ¶ 33)  These services are offered to customers free of charge, and it is against Autozone policy for employees to accept tips for rendering them.  (DSMF ¶¶ 33, 34)  Plaintiff was aware of and understood this policy.  (DSMF ¶ 35)

During Plaintiff's employment, Defendant Gilosa was promoted to Store Manager of the Williamstown branch.  (DSMF ¶ 9; Gilosa Dep. at 7:19)  Gilosa, a Caucasian male, was responsible for overseeing store operations, which included inventory management, customer service, and employee performance.  (DSMF ¶¶ 8, 9)

Defendant Stacy Tosti served as Gilosa's Assistant Manager.  (DSMF ¶ 10)  In such capacity, Tosti, a Caucasian female, shared many of Gilosa's responsibilities.  (DSMF ¶¶ 10, 12)

Plaintiff had worked at Autozone for approximately one-and-a-half years prior to Gilosa and Tosti's promotions.  Before and after the promotions, Plaintiff believed the individual Defendants "looked at [him] differently" because of his race, and followed him around the store.  (PSMF ¶¶ 13-14)

3

In the spring of 2012, Gilosa witnessed an Autozone employee, Brandon Seamon, falsely ringing up merchandise so as to create an artificially low sale price.[3]  (PSMF ¶ 16)  Gilosa immediately reported the incident to the regional Lost Prevention ("LP") Department.  (DSMF ¶ 16)  Shortly thereafter, Divisional LP Investigator Keith Ridenour visited the Williamstown store to investigate Seamon.  (DSMF ¶ 18)  Seamon admitted to sliding merchandise to customers, and was discharged for theft.  (DSMF ¶ 21)

Before he left, Seamon told Ridenour that three employees took snacks and drinks without paying for them: Plaintiff; Anthony White, an African-American male; and Daniel Lague, a Caucasian male.  (DSMF ¶¶ 21, 22)

Ridenour then asked Defendants Gilosa and Tosti about any suspicions they had about employee theft.  (DSMF ¶ 23)  Ridenour did not share with them Seamon's allegations.  Gilosa and Tosti both provided "generalized concerns about" Plaintiff and White.[4] (DSMF ¶ 23)

---

[3] The parties refer to such a practice as "sliding."  (DSMF ¶ 16)

[4] During her deposition, Tosti gave three reasons for her concerns: (i) Plaintiff spent extended periods of time in the store's parking lot and on the side of the building, even though most installations occur in front of the store; (ii) customers would call and ask about Plaintiff's schedule or request him specifically and then hang up or leave if he was not working; and (iii) on one occasion, she saw Plaintiff in the trunk of a customer's car, which she found suspicious because most of the

Following his investigation, Ridenour directed Paul
Joeckel, Regional LP Manager, to speak with Plaintiff and White.
(DSMF ¶¶ 28, 38)  Ridenour did not direct Joeckel to speak with
Lague.  (DSMF ¶ 28)  Ridenour did not know the races of
Plaintiff, White, or Lague in assigning the investigations, and
testified that he was unsure of Lague's last name.  (DSMF ¶ 28)

Joeckel conducted a phone interview with Plaintiff in June
2012.  (DSMF ¶ 38)  During the call, Plaintiff denied stealing
merchandise, but admitted to accepting tips.  (DSMF ¶¶ 43, 44)
Plaintiff told Joeckel that customers would put the tips in his
pocket after he told them he could not accept, and that he would
subsequently throw the tips away.  (Amedee Dep. at 91-94)

Joeckel administered a follow-up questionnaire, in which
Plaintiff wrote that he "took tips."  (DSMF ¶ 46)  Plaintiff did
not provide any further information.  Joeckel sent the results
of his investigation, including the completed questionnaire, to
Human Resources ("HR").  (Ridenour Dep. at 52:1-4)

HR subsequently recommended to William Smith, the
Philadelphia Regional Manager of Autozone, that Plaintiff's
employment be terminated.  (DSMF ¶ 56)  On June 16, 2012, Smith
agreed.  Smith made the decision based on HR's recommendation
and Plaintiff's admission to accepting tips.  (Smith Dep. at 31;

---

services performed by employees take place at the front of the
vehicle.  (DSMF ¶ 25)

Smith Decl. ¶ 4)  He testified it is Autozone's policy to always terminate employees for accepting tips, and that he has personally fired five other employees for such conduct.  (Smith Dep. at 28; Smith Decl. ¶¶ 8-12)  Smith did not meet with Plaintiff prior to his decision to fire him, nor was he aware of Plaintiff's race.  (Smith Dep. ¶ 6)  He did not speak to Gilosa or Tosti.  (DSMF ¶¶ 52, 57)

Gilosa was informed of Smith's determination and charged with informing Plaintiff.  She did so with Tosti present as a witness.  (DSMF ¶¶ 61-62)

Immediately thereafter, Plaintiff walked to the back of the store to gather his belongings.  Upon walking towards the store's exit, he heard Tosti say to Gilosa that "they are trying to get rid of black people."[5]  (PSMF ¶ 59)

## II.

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable

---

[5] Plaintiff has not indicated whether the "they" he overheard refers to Autozone generally, or Tosti and Gilosa specifically.

6

to the non-moving party.  <u>Pollock v. Am. Tel. & Tel. Long Lines</u>,
794 F.2d 860, 864 (3d Cir. 1986).

    "'With respect to an issue on which the non-moving party
bears the burden of proof, the burden on the moving party may be
discharged by 'showing' – that is, pointing out to the district
court – that there is an absence of evidence to support the
nonmoving party's case.'"  <u>Conoshenti v. Pub. Serv. Elec. & Gas</u>,
364 F.3d 135, 145-46 (3d Cir. 2004) (quoting <u>Celotex</u>, 477 U.S.
at 323).  The role of the Court is not "to weigh the evidence
and determine the truth of the matter, but to determine whether
there is a genuine issue for trial."  <u>Anderson v. Liberty Lobby,
Inc.</u>, 477 U.S. 242, 249 (1986).  "Only disputes over facts that
might affect the outcome of the suit under the governing law
will properly preclude the entry of summary judgment."  <u>Id.</u>

## III.

    Plaintiff alleges Defendants discriminated against him in
violation of 42 U.S.C. § 1981 and the NJLAD.[6]  He offers three

---

[6] 42 U.S.C. § 1981 states:
    All persons within the jurisdiction of the United States
    shall have the same right in every State and Territory
    to make and enforce contracts, to sue, be parties, give
    evidence, and to the full and equal benefit of all laws
    and proceedings for the security of persons and property
    as is enjoyed by white citizens, and shall be subject to
    like punishment, pains, penalties, taxes, licenses, and
    exactions of every kind, and to no other.

7

theories of discrimination: a subordinate-bias, or "cat's paw," theory, as set forth in Staub v. Proctor Hospital, 131 S. Ct. 1186, 1190 (2011); a mixed-motive theory, first introduced by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); and a pretext theory, as articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[7]

As detailed below, Plaintiff fails to demonstrate liability under all three.

**A.**

Under a "cat's paw" theory of liability, an employer is liable for discrimination when one employee's unlawfully motivated conduct is the proximate cause of another's adverse

---

Claims brought under both § 1981 and NJLAD are analyzed using the same evidentiary scheme. See Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 570 A.2d 903, 906–907 (1990) (Federal law dictates NJLAD analysis).

[7] The Court notes that some courts describe the "mixed-motive" and "pretext" doctrines as independent theories of discrimination, see, e.g., Greenawalt v. Clarion Cnty., 459 F. App'x 165, 168 (3d Cir. 2012) (analyzing pretext, mixed-motive, and subordinate-bias as "theories of discrimination"), while others refer to "mixed-motive" and "pretext" as evidentiary frameworks. See Wesley v. Palace Rehab. & Care Ctr., L.L.C., --- F. Supp. 2d ----, 2014 WL 956016, at *5 (D.N.J. Mar. 12, 2014) (analyzing "mixed-motive" and "pretext" as "evidentiary schemes"). For the instant motion, the difference is immaterial.

employment action.[8]   Howell v. Raymours Furniture Co., Inc., ---
F. Supp. 2d ----, 2014 WL 2624432, at *5 (M.D. Pa. June 12,
2014).

The seminal case is Staub.  131 S. Ct. at 1190.[9]  Therein,
two hospital supervisors issued an angiography technician, who
was simultaneously serving as an army reservist, unfavorable and
fallacious performance reviews based upon their antimilitary
animus.  The supervisors continued their discrimination by
complaining to an unbiased director of human resources.  The
director subsequently reviewed the reservist's file and
terminated him, in part because of the discriminatory reviews.

The reservist sued and obtained a jury verdict in his
favor.  The Seventh Circuit reversed.  The Circuit Court found
the employer could not be found liable because the animus-

---

[8] Judge Posner explained the origin of the phrase "cat's paw" in
Cook v. IPC Intern. Corp., 673 F.3d 625, 628 (7th Cir. 2012):
    In the fable of the cat's paw (a fable offensive to cats
    and cat lovers, be it noted), a monkey who wants
    chestnuts that are roasting in a fire persuades an
    intellectually challenged cat to fetch the chestnuts
    from the fire for the monkey, and the cat does so but in
    the process burns its paw.

[9] Although Staub features a claim under the Uniformed Services
Employment and Reemployment Rights Act, 38 U.S.C. § 4301 et
seg., the Third Circuit has applied Staub to racial
discrimination claims.  See McKenna v. City of Phila., 649 F.3d
171 (3d Cir. 2011), cert. den'd, --- U.S. ----; Lowe v. Medco
Health Solutions of Wilingboro, LLC, Civ. No. 10-4823, 2012 WL
1495440, at *14 (D.N.J. Apr. 27, 2012) (applying Staub to claims
under § 1981 and NJLAD).

9

bearing supervisors did not exercise a "singular influence" over the decision to terminate.

The Supreme Court reversed and reinstated the jury verdict. The Court concluded that (i) the fictitious reviews proximately caused plaintiff's termination and (ii) the causal link was not automatically severed just because "the ultimate decisionmaker[] exercise[d] [] judgment" independent of the biased employees' conduct. Staub, 131 S. Ct. at 1192. Rather, the Court found, "[t]he decisionmaker's exercise of judgment" was an additional "proximate cause of the employment decision." Id.

Following in Staub's footsteps, Plaintiff puts forward a cat's paw theory of his own. He argues that Tosti and Gilosa acted out of racial animus when they told Ridenour they suspected Plaintiff of theft; that such communication proximately caused both the ensuing investigation and William Smith's decision to fire him; and that consequently, Autozone is liable for discrimination.[10]

---

[10] During oral argument, Plaintiff's counsel advanced a theory of liability not previously articulated: Plaintiff did not actually violate Autozone policy because he threw the tips away; Joeckel knew Plaintiff's conduct was permissible but sought to discriminate against him because he is African-American; Joeckel purposefully hid form HR and Smith the fact Plaintiff did not actually violate the no-tipping policy; Smith's decision to terminate was proximately caused by Joeckel's discriminatory conduct. See generally Transcript of July 22, 2014 Oral Argument. The argument is devoid of any evidentiary support, and summarily rejected.

The Court disagrees.  Tosti and Gilosa's allegations did not proximately cause Plaintiff's firing.

In <u>Staub</u>, the biased supervisors both complained about the reservist and, more importantly, fabricated negative performance reviews.  And it was the reviews—not the mere complaining—that proximately caused the employee's dismissal.  <u>Staub</u>, 131 S. Ct. at 1194 (observing that the reservist's termination notice "expressly stated" that he was terminated because he failed to properly respond to the fallacious reviews).

Here, the possible causal impact of Defendants' allegedly racially motivated conduct is much less: Tosti and Gilosa did not provide falsified reviews.  Rather, they shared "generalized concerns" in response to a question posed by a company investigator.  (DSMF ¶ 23)

Furthermore, any causal force created by their response was negated by Plaintiff's outright admission to violating company policy.  Plaintiff's acknowledgment constitutes an intervening cause that severs the causal link between Tosti and Gilosa's conduct and Plaintiff's termination.  <u>See</u> <u>Staub</u>, 131 S. Ct. at 1193 ("if the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action . . ., then the employer will not be liable."); <u>see also</u> <u>Exxon Co., U.S.A. v. Sofec, Inc.</u>, 517 U.S. 830, 837 (1996)

11

(holding that a superseding cause is one of "independent origin that was not foreseeable").

Accordingly, Plaintiff fails to set forth a cat's paw theory wherein allegedly racially motivated conduct proximately caused his termination.

**B.**

Plaintiff's attempt to state a claim under a mixed-motive theory of liability is equally unsuccessful.

If a plaintiff comes forward with "direct evidence" that an illegitimate criterion was a substantial factor in the adverse action complained of, the burden of persuasion shifts to the employer to prove that it would have taken the same action in the absence of such discriminatory animus.[11] Walden v. Georgia-Pac. Corp., 126 F.3d 506, 512-13 (3d Cir. 1997).

To qualify as direct evidence, "the evidence must . . . demonstrate[] that the 'decisionmakers' placed substantial negative reliance on an illegitimate criterion in reaching their

---

[11] "[T]he term 'direct evidence' is somewhat of a misnomer, for [the Third Circuit has] held that certain circumstantial evidence is sufficient for a mixed-motives instruction, if that evidence can 'fairly be said to directly reflect the alleged unlawful basis for the adverse employment decision." Walden, 126 F.3d at 513 (quoting Hook v. Ernst & Young, 28 F.3d 366, 374 (3d Cir. 1994)).

decision.'" Walden, 126 F.3d at 513 (quoting Price Waterhouse, 490 U.S. at 277 (O'Connor, J., concurring)) (emphasis added).

Such evidence must be strong enough "to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the employer's decision." Madonna v. Conmed Corp., 2005 WL 486609, at *10 (E.D. Pa. Mar. 1, 2005) (quoting Griffiths v. CIGNA Corp., 988 F.2d 457, 470 (3d Cir. 1993)). Neither "stray remarks in the workplace" nor "statements by nondecisionmakers" are sufficient to shift the burden of persuasion. Price Waterhouse, 490 U.S. at 277 (O'Connor, J., concurring).

Plaintiff asserts that Defendant Tosti's alleged comment that "they are trying to get rid of black people" satisfies this "high hurdle." Id. at 513; see also Opp'n Br. at 17-18. The Court disagrees.

Tosti's alleged comment, though abhorrent, does not demonstrate that Autozone, as Plaintiff's employer, placed substantial negative reliance on the fact Plaintiff is African-American. This is because Tosti was not an actual decisionmaker—she was an assistant store manager. William Smith, the Philadelphia Regional Manager of Autozone, decided to fire Plaintiff. And Plaintiff has come forward with no evidence indicating that Smith was impermissibly motivated.

13

The Third Circuit has consistently held that comments made by non-decisionmakers fail to constitute direct evidence. Walden, 126 F.3d at 513-15 (affirming district court's denial of a direct evidence jury instruction because supervisory employees who made retaliatory statements were not decisionmakers); Armbruster v. Unisys Corp., 32 F.3d 768, 779 (3d Cir. 1994) (agreeing with district court that statement evidencing animus towards older employees should not trigger the direct evidence framework because declarant was not a decisionmaker); see also Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight.").[12]

Consequently, Tosti's comment does not constitute direct evidence, and Plaintiff's mixed-motive theory fails.

_____

[12] Even Defendants' citations to non-Third Circuit case law fail to support the proposition that a non-decisionmaker's statement can qualify as direct evidence. See Reply at 10, n.7 (detailing how the opinions Defendants cite from the Ninth and Eleventh Circuits feature discriminatory remarks made by the decisionmaker of the adverse action); see also Fakete v. Aetna, Inc., 308 F.3d 335, 338, n.2 (3d Cir. 2002) (observing that federal courts hold that non-decisionmakers' statements do not constitute direct evidence).
   Perhaps recognizing this fatal weakness, Plaintiff argues that Tosti, through a cat's paw theory of liability, was the actual decisionmaker. As shown above, however, see supra § III.A., this argument fails.

14

## c.

In the absence of direct evidence of discrimination, a court considers a plaintiff's claim under <u>McDonnell Douglas</u>. This familiar framework requires the following three-step analysis.

First, a plaintiff must put forward a <u>prima facie</u> case of discrimination.  This requires showing that: "(1) the plaintiff belongs to a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action . . . (4) under circumstances that raise an inference of discriminatory action." <u>Dorvil v. Burlington Coat Factory Warehouse Corp.</u>, Civ. No. 09-5778 (JEI/KWM), 2011 WL 4899976, at *3 (D.N.J. 2011); <u>see also</u> <u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 798, 797 (3d Cir. 2003).

If a plaintiff makes out a <u>prima facie</u> case, then the "burden of production shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the action." <u>Connors v. Chrysler Fin. Corp.</u>, 160 F.3d 971, 974, n.2 (3d Cir. 1998).  The defendant satisfies its burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable [action]." <u>Fuentes v. Perski</u>, 32 F.3d 759, 763 (3d Cir. 1994). The defendant need not even prove that the tendered reason was the actual reason for its behavior.  <u>Id.</u> ("The employer need not

15

prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff.").

Finally, "should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not the true reasons, but were a pretext for discrimination." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999); Norman v. Kmart Corp., 485 F. App'x 591, 593 (3d Cir. 2012). A plaintiff need not introduce evidence beyond his prima facie case. However, he must produce evidence "from which a jury could reasonably "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764.

Plaintiff fails to put forward sufficient evidence to carry his burden at this final stage.

Because he admitted to the truth of Autozone's proffered reason—violating the company's prohibition on tipping—Plaintiff cannot seek to have the trier of fact "disbelieve the employer's articulated legitimate reason[]." See Norman, 485 F. App'x at

16

593 ("[B]ecause Norman admits to the violations she committed, she cannot show that Kmart's reason was false.")

Furthermore, he fails to put forward sufficient evidence to permit a reasonable fact-finder to conclude that a discriminatory reason was more likely than not a motivating or determinative cause of his termination.  <u>Fuentes</u>, 32 F.3d at 764.

The entirety of Plaintiff's evidence is (i) Tosti's comment and (ii) the fact he and his African-American colleague White were investigated for theft, but Lague, his Caucasian colleague, was not.  (Opp'n Br. at 21)  This showing is insufficient for three reasons.

First, the fact Autozone investigated Plaintiff and White—but not Lague—is not probative of racial animus.  Seamon, the employee discharged for sliding merchandise, Tosti, and Gilosi all suspected Plaintiff and White for theft; only Seamon suspected Lague.  Consequently, although an inference of discrimination can arise from the disparate treatment of similarly situated employees., <u>see, e.g.</u>, <u>Deans v. Kennedy House, Inc.</u>, --- F. Supp. 2d ----, 2014 WL 715583, at*10 (E.D. Pa. Feb. 25, 2014), Plaintiff, White, and Lague were not similarly situated: Plaintiff and White were thrice identified, Lague was identified only once.  The fact Autozone investigated

17

only those employees who are repeatedly suspected of theft is not indicative of unlawful racial animus.

Second, all Plaintiff's showing could possibly prove is that his immediate supervisors harbored racial animus. Not a single piece of evidence ascribes discriminatory motivation to Joeckel, the employee who investigated Plaintiff, or Smith, who decided to fire him.[13]  Smith was not even aware of Plaintiff's race, and did not speak with the individual Defendants prior to concluding that Plaintiff should be terminated.

Lastly, as noted supra, the conduct of Tosti and Gilosa did not proximately cause Smith's determination.  See § III.A.

Consequently, Plaintiff has not put forward sufficient evidence to state a cognizable claim for relief.  Defendants' motion for summary judgment will be granted.[14]

---

[13] Plaintiff's counsel asserted during oral argument that a jury could draw the reasonable inference that Joeckel harbored racial animus because (i) he testified that he had not met Plaintiff; (ii) Plaintiff testified that he had in fact met Joeckel; therefore (iii) Joeckel must be lying to disguise discriminatory motivation.  The Court disagrees that any such inference would be reasonable.

[14]    Plaintiff also brings an aiding and abetting claim against the individual Defendants, Tosti and Gilosa.
    "As to any aiding and abetting claim brought against the Individual Defendants under the NJLAD, said claim fails because '[i]t is only possible to find an individual liable for aiding and abetting under the [NJLAD] . . . when the employer may be held liable under the [NJLAD].'"  Joseph v. N.J. Transit Rail Operations, Inc., 2013 WL 5676690, at *13 (D.N.J. Oct. 17, 2013).  Because Autozone is found to be not liable, Plaintiff's aiding and abetting claim must also fail.

**IV.**

   For the reasons stated above, Defendants' motion for summary judgment will be denied.   An appropriate order accompanies this opinion.

Date: July _24th_, 2014

_____
Hon. Joseph E. Irenas
Senior United States District Judge

19